**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5002-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WANDA ANTHONY,

    Defendant-Appellant.

_____

Submitted November 2, 2020 – Decided March 5, 2021

Before Judges Fasciale and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 14-06-0412.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Paul H. Heinzel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Wanda Anthony, appeals from her jury trial convictions and resultant prison sentences for possession of a firearm for an unlawful purpose and for criminal mischief. After carefully reviewing the record in view of the applicable legal principles and arguments of the parties, we affirm the convictions. We also affirm the sentence imposed on the firearms possession crime. We remand, however, for resentencing on the criminal mischief conviction, which was treated as a fourth-degree crime even though defendant actually was convicted of a disorderly persons offense.

This case arises from an unfortunate altercation that occurred in April 2014 during a first date. The evidence adduced at trial shows that defendant and her date, Stuart Cundiff, returned to Cundiff's home after a night visiting bars. There, Cundiff's longtime girlfriend, Tytana Jones, confronted and physically assaulted defendant. Defendant, who was then a New York City police officer, was carrying a handgun in her purse. Angry and apparently believing that Cundiff was responsible for the physical altercation, defendant fired her weapon into Cundiff's empty car, damaging a window.

Defendant was indicted for second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); third-degree hindering apprehension/ investigation, N.J.S.A. 2C:29-3(b); and fourth-degree criminal mischief,

A-5002-17

N.J.S.A. 2C:17-3(a)(1). She was tried before a jury over the course of eleven non-consecutive days in September and October 2017. The jury acquitted defendant of hindering but convicted her of possession of a firearm for an unlawful purpose. The jury also convicted defendant of criminal mischief, which was downgraded by the trial judge to a disorderly persons offense at the close of the State's case.[1]

Defendant appeared before a different judge for sentencing in May 2018. In accordance with the mandatory minimum sentencing provisions of the Graves Act, N.J.S.A. 2C:43-6(c), defendant was sentenced on the firearms conviction to a five-year prison term with a forty-two-month period of parole ineligibility. The sentencing judge also imposed a concurrent six-month term of imprisonment on the criminal mischief conviction.

Defendant raises the following contentions for our consideration:

POINT I

THE COURT'S RULING BARRING CROSS-EXAMINATION OF A WITNESS ABOUT HIS OUT-

---

[1] Prior to closing arguments, defense counsel moved for a judgment of acquittal on the criminal mischief count. The trial judge ruled that the State had not produced evidence to prove that the damage to Cundiff's vehicle exceeded $500. The judge thereupon downgraded the criminal mischief charge from a fourth-degree crime to a disorderly persons offense and instructed the jury accordingly.

A-5002-17

OF-COURT STATEMENTS, WHICH WERE ADMITTED AS SUBSTANTIVE EVIDENCE, VIOLATED [DEFENDANT'S] RIGHT TO CONFRONTATION.

POINT II

THE TRIAL COURT'S FAILURE TO GIVE INSTRUCTIONS ON THIRD-PARTY GUILT AND "FALSE IN ONE, FALSE IN ALL," DEPRIVED [DEFENDANT] OF A FAIR TRIAL. (NOT RAISED BELOW).

    A. FAILURE TO CHARGE THIRD-PARTY GUILT WAS PLAIN ERROR.

    B. FAILURE TO CHARGE "FALSE IN ONE – FALSE IN ALL" WAS PLAIN ERROR.

POINT III

PROSECUTORIAL MISCONDUCT AND OVERREACHING DEPRIVED [DEFENDANT] OF HER RIGHT TO A FAIR TRIAL.

POINT IV

THE TRIAL COURT AND STATE DEPRIVED [DEFENDANT] OF HER RIGHT TO A FAIR TRIAL BY INTRODUCING A PRIOR INCONSISTENT STATEMENT OF A STATE WITNESS THAT DID NOT SATISFY THE REQUIREMENTS OF N.J.R.E. 803(A)(1).

POINT V

THIS MATTER MUST BE REMANDED FOR RESENTENCING ON COUNT THREE, WHICH WAS DOWNGRADED TO A DISORDERLY PERSONS

OFFENSE, BUT WHICH WAS SENTENCED AS A FOURTH-DEGREE OFFENSE.

POINT VI

THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO IMPOSE A DOWNGRADED SENTENCE ON COUNT ONE.

## I.

We recount the circumstances of the offense and the ensuing investigation in substantial detail to provide a factual context for the legal issues in this appeal. Defendant and Cundiff's first romantic encounter began in the late afternoon of April 29, 2014 at a restaurant in Elizabeth. When Cundiff asked defendant about her occupation, she disclosed she was a New York police sergeant and displayed the firearm in her purse. Later, the pair proceeded to Cundiff's house to drop off defendant's car so they could travel together to a bar in Newark. They picked up Cundiff's friend and cousin along the way. The group of four later moved on to a bar in Plainfield.

Jones, Cundiff's on-and-off girlfriend, called Cundiff while he and defendant were at his house dropping off defendant's car. After that call, Jones drove to the bar in Plainfield to confront Cundiff and defendant. Cundiff's friend and cousin interceded and persuaded Jones to leave before she could exchange words with defendant.

A-5002-17

Jones called Cundiff again as the group was leaving the bar in Plainfield. Cundiff passed his cell phone to defendant. According to a statement Cundiff gave to police later that night, defendant said to Jones, "I'm fucking your man tonight."

The group travelled to a bar in New Brunswick. They departed shortly before 2:00 a.m. to drop off Cundiff's cousin and friend. Cundiff, his cousin, and his friend smoked marijuana before parting company.

Cundiff drove defendant to his home around 3:00 a.m. and Jones closely followed. Before defendant could exit Cundiff's vehicle, Jones opened the passenger-side car door and punched defendant in the face. The two women scuffled. Jones struck defendant in the head multiple times, pulled her hair, and dragged her across the lawn. Cundiff was eventually able to pull Jones away from defendant.

Cundiff took defendant inside to the bathroom to clean up. Cundiff observed that defendant appeared disoriented and he suspected she might have suffered a concussion. He asked her to stay at his house. Defendant declined when Jones indicated that she also would be staying at the house.

Before leaving, tempers flared again, and defendant attempted to strike Jones with a Lysol can but missed. The two women resumed fighting until

6

Cundiff separated them a second time. Cundiff observed that defendant now had a black eye, a cut and swollen lip, a scraped elbow, and disheveled clothes. Jones, in contrast, had no visible injuries.

Cundiff escorted defendant to her vehicle and checked to make certain she was fit to drive. Before finally leaving, defendant threatened to retaliate against Cundiff. When Cundiff returned to the house, Jones warned him that defendant appeared to have a gun in her hand. Cundiff did not see defendant holding a weapon, but replied, "[s]he would. She's a fucking cop." Cundiff and Jones then heard gunfire. They retreated to the basement and Cundiff called 9-1-1. He ventured outside to relay defendant's license plate number to the 9-1-1 dispatcher.

Officer Brian McLaughlin responded to the dispatch and stopped defendant's vehicle. When asked whether she was carrying a firearm, defendant stated that she had a handgun in her purse. She exclaimed, "I never fired my weapon, Officer. I swear to God I didn't[,]" although Officer McLaughlin had not asked whether the weapon had been discharged. Officer McLaughlin observed that defendant smelled of alcohol. Defendant told the officer, "I had like two drinks, that's it."

A-5002-17

Defendant repeatedly invoked her status as a police sergeant, imploring the officer to remove her handcuffs. "Please, I'm a sergeant," she explained. "I'm your boss. I would do it for you. I'm your boss. If anything happen[sic], I got your back." She further remarked, "I would never bring you in like this and I would give you like a bunch of water to drink so when they give you a breathalyzer your test would like be—it wouldn't be that much. I would keep giving you water to drink and I wouldn't leave you in cuffs, sir." When Officer McLaughlin asked if defendant needed medical treatment, she replied, "[n]o, I don't want medical attention. I have a black eye and a busted lip. I just wanted to go home and I swear to God, I would never cuff you in the back of a car like a perp . . . ."

Officer McLaughlin transported defendant to the local police headquarters. Once there, she declined an EMT's offer to take her to the hospital to check for a concussion. Defendant provided her personal contact information to the EMT, but later refused to provide the information to Officer McLaughlin, claiming that her head hurt and that she was not clear with her information "because of the unconsciousness." Officer McLaughlin testified that throughout the roadside encounter and at the police station, defendant maintained eye

8

contact with him, which was inconsistent with his experience with others who had suffered significant head injuries.

Defendant later was questioned by Lieutenant William Kelly. She adamantly denied discharging her weapon when she was told that a spent shell casing had been found on the ground near Cundiff's car.

Defendant's vehicle was searched pursuant to a warrant. There, police recovered her handgun, which was in a purse that also contained defendant's driver's license and New York Police Department identification. The weapon was found to have a round in the chamber. The high-capacity magazine was fully loaded, save for one missing bullet. The State's forensics expert opined that the bullet recovered from inside Cundiff's vehicle had been fired from defendant's handgun.

Approximately two hours after Cundiff made the 9-1-1 call, Detective Sherif Zaiton went to Cundiff's home to take his statement. Detective Zaiton sat with Cundiff in his basement and informed him that the statement would be electronically recorded. The Detective neglected, however, to place Cundiff under oath. Detective Zaiton later characterized that as an "oversight."

Later that afternoon, Lieutenant Kelly also took an electronically recorded statement from Cundiff. This time, Cundiff was placed under oath. Cundiff

A-5002-17

repeated information that he had given to Detective Zaiton earlier that day and added further details to his account of events. Specifically, Cundiff told Lieutenant Kelly the following: defendant showed him her handgun in her purse; defendant took his phone from him in the car and told Jones, "I'm fucking your man"; defendant swung at Jones with a Lysol can in the garage but missed; defendant was "a little bit" intoxicated at the time; defendant took several wine bottles from his home as she left; defendant made threats such as "I'm going to have some guys beat you up"; he heard Jones state that defendant had a gun, although Cundiff did not see defendant brandish a weapon; he heard gunfire while hiding in the basement garage; he saw the bullet hole in his car; and he did not believe defendant's intention was to shoot anyone.

Cundiff texted defendant several times over the next few days, stating, "[t]hat wasn't necessary. Why would you fuck your career up?" and "[j]ust worried about you. I do care about you. I told police you weren't trying to shoot anyone, that you didn't have intentions of shooting anyone. If you need me to do anything, just let me know."

At trial, Cundiff claimed that he did not recall much of the information that he provided to Detective Zaiton and Lieutenant Kelly. When presented with transcripts of his recorded statements to refresh his recollection, Cundiff

A-5002-17

claimed his memory was hazy because he had been drinking and smoking marijuana that night.

## II.

We first address defendant's contention the trial court erred in admitting Cundiff's unsworn recorded statement to Detective Zaiton as a prior inconsistent statement under N.J.R.E. 803(a)(1).[2] The judge found that Cundiff's claim during his direct examination that he could not remember what he had told Detective Zaiton was not credible and that his trial testimony was inconsistent with the prior statements he gave to police shortly after the shooting episode. The audio recordings of both statements were played to the jury.

Defendant contends that Cundiff's out-of-court statement to Detective Zaiton lacks the level of reliability required for admission as substantive evidence under State v. Gross, 121 N.J. 1 (1990). Defendant maintains that statement was unreliable because Cundiff testified at trial that he was drunk and high at the time he was interviewed by Detective Zaiton, and also because Cundiff had reason to lie to the detective to protect himself and Jones, his long-time girlfriend. We reject defendant's arguments and affirm the admissibility of

---

[2] During an in-chambers conference following the judge's ruling on the admissibility of the statement Cundiff gave to Detective Zaiton, defense counsel stipulated to the admission of Cundiff's recorded statement to Lieutenant Kelly.

Cundiff's recorded statement to Detective Zaiton substantially for the reasons set forth in the trial court's detailed and comprehensive findings. We add the following remarks.

Under N.J.R.E. 803(a)(1), a declarant's out-of-court statements may be admissible as substantive evidence, and not just used for impeachment purposes, where the statements are "inconsistent with the declarant-witness's testimony at the trial or hearing and [are] offered in compliance with N.J.R.E. 613." N.J.R.E. 613, in turn, requires that such statements be excluded unless the declarant-witness has an opportunity to explain or deny the statement and the opposing party is given the opportunity to cross-examine the witness on the out-of-court statement.

When a party seeks to admit a prior inconsistent statement for substantive purposes, the trial court must determine whether the circumstances indicate that the out-of-court statement is reliable. The proponent seeking admission bears the burden of proving the reliability of the prior inconsistent statement by a fair preponderance of the evidence. Gross, 121 N.J. 16–17. Our Supreme Court in Gross identified fifteen factors for trial courts to consider when determining the reliability of an out-of-court statement:

> (1)    the declarant's connection to and interest in the
>         matter reported in the out-of-court statement;

A-5002-17

(2)    the person or persons to whom the statement was given;

(3)    the place and occasion for giving the statement;

(4)    whether the declarant was then in custody or otherwise the target of investigation;

(5)    the physical and mental condition of the declarant at the time;

(6)    the presence or absence of other persons;

(7)    whether the declarant incriminated himself or sought to exculpate himself by his statement;

(8)    the extent to which the writing is in the declarant's hand;

(9)    the presence or absence, and the nature of, any interrogation;

(10)   whether the offered sound recording or writing contains the entirety, or only a portion of the summary, of the communication;

(11)   the presence or absence of any motive to fabricate;

(12)   the presence or absence of any express or implicit pressures, inducement[,] or coercion for making the statement;

(13)   whether the anticipated use of the statement was apparent or made known to the declarant;

(14)   the inherent believability or lack of believability of the statement; and

(15)   the presence or absence of corroborating evidence.

[Id. at 10].

The trial judge first determined that Cundiff's recorded statement to Detective Zaiton had been offered in compliance with N.J.R.E. 613, as Cundiff was afforded the opportunity at trial to explain or deny his prior inconsistent

13

statements.  The trial judge also ruled that defense counsel had an opportunity to cross-examine Cundiff regarding his recorded statements to police.[3]

The trial judge systematically addressed the Gross factors, making exhaustive and detailed findings.  Specifically, the judge found:

(1) Cundiff, as the alleged victim of a shooting that damaged the motor vehicle primarily operated by him and owned by his parents, had a significant connection and interest to the matter reported in the out-of-court statement;

(2) The statement was given to Detective Zaiton in the course of fulfilling his duty as a law enforcement officer sent to investigate a reported crime;

(3) The statement was given at Cundiff's place of residence, and Cundiff was neither taken into custody nor subjected in any way to any pressure to provide the statement, whether tacit or direct;

(4) Cundiff was not the target of an investigation, nor was he subjected to pressure to provide the statement;

---

[3]  In section III, we address defendant's contention that the trial judge unduly restricted the scope of counsel's cross-examination of Cundiff in violation of defendant's confrontation clause rights.

(5) Although there were competing proofs and arguments submitted regarding Cundiff's condition at the time, the court determined from reviewing the electronic recording that Cundiff appeared to speak clearly, was oriented as to his surroundings, responded cogently to Detective Zaiton's questions, and displayed the same calm demeanor during questioning as he did during his in-court testimony;

(6) The interview was one-on-one, and no one else was present during his statement;

(7) Cundiff neither incriminated himself nor sought to exculpate himself during his statement;

(8) Cundiff's statements were not written, but were electronically recorded[4];

(9) There was no interrogation;

(10) Detective Zaiton attested that the audio recording was the entirety of the statement, without omissions or deletions, with which the court agreed;

---

[4] We note that under N.J.R.E. 801(e), sound recordings are included within the definition of a writing.

A-5002-17

(11) There was no motive for Cundiff to fabricate his story to Detective Zaiton, as he was not the subject of a criminal investigation and had no motive to protect someone else;

(12) Detective Zaiton testified that there were no promises, inducements, or pressures placed upon Cundiff; rather, the statements were made as a result of the police response to Cundiff's own 9-1-1 call;

(13) It was reasonable for Cundiff to assume that the statement might be used by police in their investigation of the reported crime, notwithstanding the lack of such notification to Cundiff;

(14) The statement made to Detective Zaiton was inherently believable; and

(15) There was substantial evidence corroborating Cundiff's statements to Detective Zaiton.

The judge found Detective Zaiton's testimony credible. Moreover, the judge carefully considered and rejected defendant's argument that Cundiff was too drunk and high to have given a reliable statement. The judge listened to the sound recording of Cundiff's statement to Detective Zaiton and determined that Cundiff appeared cogent.

A-5002-17

The trial judge also considered and rejected defendant's argument that Cundiff had a motive to fabricate his account to police to protect himself and his longtime girlfriend. The judge noted that Cundiff was not the subject of a criminal investigation.

As a general matter, "[t]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Scott, 229 N.J. 469, 479 (2017) (quoting Estate of Hanges v. Metro Prop. & Cas. Ins. Co., 202 N.J. 369, 383–84 (2010)). We thus apply "a deferential standard in reviewing a trial court's evidentiary rulings and uphold its determinations 'absent a showing of an abuse of discretion.'" Ibid. (quoting State v. Perry, 225 N.J. 222, 233 (2016)). Indeed, "[a] reviewing court must not 'substitute its own judgment for that of the trial court' unless there was a 'clear error in judgment'—a ruling 'so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting Perry, 225 N.J. at 233).

Applying this deferential standard of review to the record before us, we conclude the trial court did not abuse its discretion in making its detailed factual findings, which were amply supported by the record, or in ruling that the out-of-court statement Cundiff gave to Detective Zaiton was reliable and admissible as substantive evidence under N.J.R.E. 803(a)(1).

17

III.

We next address defendant's contention that her Sixth Amendment right of confrontation was violated when the trial judge enforced limits on the scope of defense counsel's cross-examination of Cundiff.  Given the importance of the constitutional right to confront witnesses and the complex sequence of events that unfolded at trial, we deem it appropriate to recount the relevant circumstances in detail.

As we have already noted, Cundiff's trial testimony was at odds with the two recorded statements he gave to police shortly after the shooting incident. When the State realized during its direct examination that Cundiff was disavowing his previous recorded statements, the prosecutor advised the court and defense counsel that the State would move to admit Cundiff's two out-of-court statements as substantive evidence.  That motion precipitated the need for an N.J.R.E. 104 hearing, commonly referred to as a Gross hearing, outside the presence of the jury.

In response to the State's motion, defense counsel told the judge, "If you're . . . asking me what my preference is?  I'd prefer to cross-examine him [in front of the jury] before we do that [referring to the Gross hearing]."  The trial judge acceded to defense counsel's preference and permitted counsel to cross-examine

Cundiff in front of the jury before convening the <u>Gross</u> hearing to decide whether to admit the recorded statements as substantive evidence.

The judge carefully explained how the impending cross-examination and any re-direct and re-cross examinations of the witness would proceed in front of the jury. Specifically, the trial judge alerted defense counsel that it would enforce the general rule in N.J.R.E. 611(b), which limits cross-examination to the subject matter of the direct examination and matters affecting the witness's credibility. The judge thereupon cautioned defense counsel to use the impending cross-examination to address all germane issues within the scope of the State's direct examination. The judge expressly warned defense counsel that if the prosecutor did not revisit Cundiff's out-of-court statements during re-direct examination, counsel would be barred from revisiting those statements during re-cross examination.

Defense counsel expressly acknowledged the judge's warning. Our review of the record also indicates that defense counsel was exhaustive in his cross-examination of Cundiff at trial; indeed, the cross-examination spans approximately fifty-three pages of trial transcript. Counsel painstakingly explored the circumstances surrounding the two recorded statements Cundiff gave to the police, the substantive content of those statements, and the content

19

of the 9-1-1 call that Cundiff had made. The record also shows that Cundiff was cooperative with defense counsel during cross-examination. In his trial testimony, both on direct and cross, Cundiff repeatedly maintained that he could not recall what had transpired, other than that defendant had consumed very little alcohol that night and that Jones had beaten defendant to the point of a potential concussion.

During a break in the cross-examination, the judge scheduled the Gross hearing for the following day. At that colloquy, the assistant prosecutor announced that if the court granted the State's motion to admit the recorded statements as substantive evidence, the State would not thereafter pose questions to Cundiff about those statements in front of the jury. The judge then addressed defense counsel:

| The court: | Okay. So if—if that is so, then I'm just reminding you, this will be the conclusion of your opportunity to cross-examine Mr. Cundiff. As I indicated earlier, should [the State] take a different approach, of course, then if [the State] asks any further questions on re-direct, you get re-cross. |
| --- | --- |
| Defense Counsel: | There you go. |
| The court: | Okay? |

A-5002-17

Defense    Okay.
Counsel:

Defense counsel then resumed his cross-examination of Cundiff before the jury. After the court excused Cundiff for the day, counsel announced that he had concluded his cross-examination. Counsel explained, "I'm telling everybody now, I'm withdrawing [my final question that drew an objection] and then resting on that examination. I'm done. So I'm withdrawing the question and then saying I have no further questions. That's what I intend to do tomorrow."

The next day, as it had previously indicated, the State conducted its re-direct examination of Cundiff but did not address the substance of Cundiff's statements to police. Counsel did not argue at that time that the trial court had impinged on defendant's right of confrontation.

We begin our analysis of defendant's confrontation clause contention by acknowledging certain foundational principles. Under N.J.R.E. 611(a), the trial court is entrusted with "reasonable control over the mode and order of interrogating witnesses and presenting evidence to (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." N.J.R.E. 611(b) further provides, "[c]ross-examination should not go beyond the subject matter of the

21

direct examination and matters affecting the witness's credibility." However, the court "may allow inquiry into additional matters as if on direct examination." Ibid.

As a general matter, our review of a judge's application of N.J.R.E. 611(b) is limited. "The conduct of a trial, including cross-examination and its appropriate limits, is within the discretion of the trial court. Persley v. New Jersey Trans. Bus Ops., 357 N.J. Super. 1, 9 (App. Div. 2003) (citing Casino Reinv. Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 492 (App. Div. 2000) and N.J.R.E. 611(b)). "Exercise of that discretion is ordinarily not interfered with unless there is a clear abuse of discretion which has deprived a party of a fair trial." Ibid. (citing Daisey v. Keene Corp., 268 N.J. Super. 325, 334 (App. Div. 1993)).

Defendant now posits that the trial judge somehow violated defendant's Sixth Amendment right to confrontation by enforcing the familiar rule that cross-examination should not exceed the scope of the direct examination that precedes it. We reject that argument. The record belies any claim that defense counsel was precluded from posing questions to Cundiff concerning the recorded statements the witness had previously given to police; indeed, the judge afforded counsel ample opportunity to conduct an exhaustive cross-examination

of Cundiff concerning those prior statements. Counsel took full advantage of that opportunity.[5] Counsel also was given fair notice and acknowledged that there might be no further opportunity to pursue that line of questions depending upon the scope of the prosecutor's re-direct examination.

We add that defendant has not specified any question(s) that her counsel was precluded from posing by the judge's decision to enforce the general rule set forth in N.J.R.E. 611(b). We therefore conclude that defendant was not deprived of the right to a fair trial. To the contrary, defendant was given a full and fair opportunity at trial to confront the evidence the State presented against her, including Cundiff's prior inconsistent statements that were admitted as substantive evidence.

## IV.

We next address defendant's contention the assistant prosecutor committed misconduct warranting a new trial. During his summation, the prosecutor commented that the jury could infer defendant's guilt from Cundiff's call to 9-1-1 and from the fact that defendant had not called 9-1-1 despite being

---

[5] We note also that defense counsel was permitted to thoroughly cross-examine Detective Zaiton regarding the statement he took from Cundiff.

accosted and beaten by Jones. The prosecutor referred to a portion of the 9-1-1 call in which Cundiff stated that defendant "fucked up her fucking career."

The prosecutor also commented on the text messages between Cundiff and defendant in the days following the incident, remarking that defendant's text message in which she explained that she did not call 9-1-1 because she did not want to make trouble made no sense. Specifically, the prosecutor remarked, "Did you ever hear a cop say don't call 9-1-1 if you got a problem? Don't do that. Why would she fear trouble unless she had done something wrong?"

The prosecutor also told the jury:

> [a] police officer does not have the luxury of getting a pass after having a few drinks and then making a bad decision with her firearm. That firearm gives police officers the power of deadly force, life and death.
>
> We ask a lot of them. At a minimum, we ask them to exercise good judgment. We are not saying you can't have fun. You want to drink? Absolutely. Leave your gun at home. You want to carry your gun across state lines out of jurisdiction and go out? Fine, just don't drink.
>
> The use of this weapon in the manner in which defendant used it is inexcusable. This is life and death in my hand.

24

After the assistant prosecutor completed his summation, defense counsel moved for a mistrial, claiming that the prosecutor impermissibly sought to shift the burden of proof onto defendant.

The trial judge denied the motion for mistrial, concluding the prosecutor's closing remarks were neither an attempt to shift the burden of proof nor an appeal to emotions. The judge instead found that the prosecutor had highlighted the illogic of a police officer's decision not to call 9-1-1 after being assaulted and injured, and further determined that (1) the evidence supported the prosecutor's premise that defendant indeed consumed alcohol that night, (2) the prosecutor did not act improperly in suggesting that defendant's alcohol consumption could have played a role in her decisions that night, and (3) the prosecutor's comment regarding her alcohol consumption neither prejudiced nor improperly shifted the burden of proof to defendant, particularly since both sides contended that defendant was not intoxicated despite her alcohol consumption. On appeal, defendant further characterizes the prosecutor's summation as an "impermissible emotional plea to the jury" and a "call to arms" that "empowered the jury to convict based on partisanship and outrage."

Our Supreme Court has recognized that "[p]rosecutors in criminal cases are expected to make vigorous and forceful closing arguments to juries[,]" and

that prosecutors are afforded "considerable leeway in closing arguments so long as their comments are reasonably related to the scope of the evidence presented." State v. Timmendequas, 161 N.J. 515, 587 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)). As we have previously observed, "instances of prosecutorial excesses in the course of summation seem to come to this court with numbing frequency." State v. Marquez, 277 N.J. Super. 162, 172 (App. Div. 1994) (quoting State v. Watson, 224 N.J. Super. 354, 362 (App. Div. 1988)). "However, not every deviation from perfection on the part of a prosecutor warrants a reversal of a conviction." State v. Darrian, 255 N.J. Super. 435, 453 (App. Div. 1992) (citing State v. Bucanis, 26 N.J. 45, 56 (1958)). Indeed, we have "steadfastly adhered to the view that in order to warrant reversal, 'the improper conduct must have resulted in substantial prejudice to the defendant's fundamental right to have a jury fairly assess the persuasiveness of [her] case.'" Marquez, 277 N.J. Super. at 172–73 (quoting Darrian, 255 N.J. Super. at 453). A new trial is warranted, therefore, only when a prosecutor's closing comments are "'clearly and unmistakably improper,' and . . . substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of [her] defense." State v. Wakefield, 190 N.J. 397, 438 (2007) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)).

We apply these general principles to the prosecutor's summation and affirm. First, we agree with the trial judge that the prosecutor's closing statements regarding an off-duty police officer drinking and bringing a gun across state borders were not "emotional pleas" that would substantially prejudice defendant. We note that the trial judge had the opportunity to view the prosecutor's summation firsthand and thus was able to gauge its impact on the jury. Wakefield, 190 N.J. at 485–86 (acknowledging that trial judges "ha[ve] the feel of the case and [are] best equipped to gauge the effect of a prejudicial comment on the jury in the overall setting." (quoting State v. Loftin, 146 N.J. 295, 365–66 (1996))). We are satisfied, moreover, that all of the prosecutor's remarks were reasonably related to evidence that was introduced at trial. Timmendequas, 161 N.J. at 587.

We also agree with the trial judge that the prosecutor's reference to defendant's decision not to call 9-1-1 did not seek to shift the burden of proof. We believe it was permissible for the State to argue, based on the evidence presented, that defendant did not call 9-1-1 because she did not want an official investigation of the circumstances of the confrontation and ensuing weapons discharge.

Furthermore, the assistant prosecutor never suggested in his summation that defendant had the burden of proving who pulled the trigger. Rather, he argued, based on the evidence the jury heard, that it was improbable that either Cundiff or Jones fired at Cundiff's vehicle. We add that the jury was properly and repeatedly instructed that the State bore the burden of proving defendant's guilt beyond a reasonable doubt.

In sum, although the State's summation was vigorous and forceful, Timmedequas, 161 N.J. at 587, the assistant prosecutor focused on the evidence that had been admitted and why that evidence proved that it was defendant who fired the gun at Cundiff's vehicle, constituting an unlawful purpose within the meaning of N.J.S.A. 2C:39-4. We thus see no reason to disturb the trial judge's denial of defendant's motion for a mistrial based on prosecutorial misconduct.

## V.

Defendant claims for the first time on appeal that the trial judge erred by failing to sua sponte provide the "false in one, false in all" model jury charge, and by failing to sua sponte instruct the jury on "third-party guilt." We disagree. The trial judge convened a charge conference at which counsel was afforded ample opportunity to make requests for specific jury charges. Neither party requested either of these charges.

28

Although we generally decline to address issues not properly raised before the trial court where there existed an opportunity to do so, Nieder v. Royal Indemn. Ins. Co., 62 N.J. 229, 234 (1973), in this instance we elect to address defendant's newly minted contentions on their merits. See also R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]"). We review both of defendant's contentions under the plain error standard. Wakefield, 190 N.J. at 473; see also State v. Montalvo, 229 N.J. 300, 320 (2017) (holding where a defendant does not object to the jury charge, "there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case" (quoting State v. Singleton, 211 N.J. 157, 182 (2012))).

We first address the "false in one, false in all" charge.[6] It is long-settled law that the decision to give this instruction rests in the discretion of the trial

---

[6] In State v. Young, we recognized that

> [t]he "false in one, false in all" charge instructs the jury that if the jurors find that any witness 'willfully or knowingly testified falsely to any material facts in the case, with intent to deceive [them], [the jury] may give such weight to his or her testimony as [they] may deem it is entitled.

judge. See State v. Ernst, 32 N.J. 567, 583–84 (1960) ("[A] trial judge in his [or her] discretion may give the charge in any situation in which he [or she] reasonably believes a jury may find a basis for its application.").

In this case, we believe it was sufficient that the trial judge instructed the jurors that they were the sole finders of the facts and that it was their responsibility to determine the credibility of the witnesses and the weight to give to the evidence. The general instructions that were provided to the jury provided ample explanation as to how they should perform those factfinding tasks. Although providing the "false in one, false in all" charge may have been appropriate had defendant requested it, the absence of a sua sponte instruction was not error, much less plain error capable of producing an unjust result. R. 1:7-5.

We likewise reject defendant's contention that the trial judge was obliged sua sponte to give a third-party guilt instruction.[7] As noted, neither party

> [448 N.J. Super. 206, 228 (App. Div. 2017) (alterations in original) (quoting Model Jury Charge (Criminal), "False in One False in All" (1991)).]

[7] The third-party guilt model jury charge reads as follows:

> The defendant contends that there is evidence before you indicating that someone other than he or she may

requested this charge even though both sides agreed that a key disputed issue at trial was whether defendant was the person who fired the shot into Cundiff's car.

Although the State bears the burden of proving a defendant's guilt, an accused is constitutionally entitled to prove his or her innocence or to persuade the fact finder of a reasonable doubt about guilt by suggesting that someone else committed the crime charged. See State v. Jiminez, 175 N.J. 475, 486 (2003);

<hr>

> have committed the crime or crimes, and that evidence raises a reasonable doubt with respect to the defendant's guilt.
>
> In this regard, I charge you that a defendant in a criminal case has the right to rely on any evidence produced at trial that has a rational tendency to raise a reasonable doubt with respect to his/her own guilt.
>
> I have previously charged you with regard to the State's burden of proof, which never shifts to the defendant. The defendant does not have to produce evidence that proves the guilt of another but may rely on evidence that creates a reasonable doubt. In other words, there is no requirement that this evidence proves or even raises a strong probability that someone other than the defendant committed the crime. You must decide whether the State has proven the defendant's guilt beyond a reasonable doubt, not whether the other person or persons may have committed the crime(s).
>
> [Model Jury Charges (Criminal), "Third-Party Guilt" (approved Mar. 9, 2015).]

see also State v. Koedatich, 112 N.J. 225, 297 (1988). To be admissible, evidence of another's guilt need not be conclusive, and it "need not [constitute] substantial proof of a probability that the third person committed the act." Jiminez, 175 N.J. at 486. On the other hand, the theory cannot be speculative. Instead, "[s]omewhere in the total circumstances there must be some thread capable of inducing reasonable [persons] to regard the event as bearing upon the State's case." Id. at 487 (quoting State v. Sturdivant, 31 N.J. 165, 179 (1959)).

In this instance, defense counsel argued in summation that no witness could say who fired defendant's gun. The prosecutor countered that Cundiff had no motive to damage his own vehicle, and Jones first learned that defendant was an armed off-duty police officer only moments before the gunfire erupted. We add that the gun that fired the bullet recovered inside Cundiff's vehicle was found in defendant's vehicle when she was stopped by police in response to the 9-1-1 call shortly after the shooting.

We note there was no testimony that either Jones or Cundiff ever took control of defendant's weapon, much less discharged it and returned it to her before she left the scene of the shooting. We reiterate that the weapon was found in her purse, inside her car after the 9-1-1 call. Notwithstanding the speculative nature of defendant's argument, we believe that the trial judge could have

exercised his broad discretion to instruct the jury on third-party guilt had it been requested. The absence of such a sua sponte instruction, however, does not amount to plain error.

Considering the jury charge as a whole in light of the arguments of counsel, we are satisfied the jurors were properly instructed as to their role in determining whether defendant or someone else discharged the weapon. See State v. Marshall, 123 N.J. 1, 145 (1991) ("[T]he prejudicial effect of an omitted instruction must be evaluated 'in light of the totality of the circumstances— including all the instructions to the jury, and the arguments of counsel.'" (quoting Kentucky v. Whorton, 441 U.S. 786, 789 (1979))). The jury instructions made clear, moreover, that the State bore the burden of proving that defendant possessed the firearm for an unlawful purpose beyond a reasonable doubt. In these circumstances, the failure to provide a specific third-party guilt charge in the absence of a request for that instruction by defense counsel was not capable of producing an unjust result. R. 1:7-5.

VI.

Finally, we turn to defendant's contention that the sentencing court abused its discretion by refusing to sentence defendant in accordance with N.J.S.A. 2C:44-1(f). That statute reads in pertinent part,

33

> In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interests of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than the crime for which he was convicted.

The sentencing judge found that six mitigating factors applied,[8] and that these mitigating factors substantially outweighed the sole aggravating factor, the need to deter defendant and others. N.J.S.A. 2C:44-1(a)(9). The sentencing judge also found, however, that defendant failed to demonstrate compelling reasons needed to satisfy the interest of justice standard.

The downgrade provisions of N.J.S.A. 2C:44-1(f)(2) have been extensively construed and interpreted by case law. When a trial court considers imposing a sentence one degree lower than the crime for which a defendant has been convicted, it must apply a two-step analytical process. State v. Rice, 425 N.J. Super. 375, 384 (App. Div. 2012). First, the judge must be clearly

---

[8] The court found the following mitigating factors: defendant acted under strong provocation, N.J.S.A. 2C:44-1(b)(3); there were substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense, N.J.S.A. 2C:44-1(b)(4); the victim of defendant's conduct induced or facilitated its commission, N.J.S.A. 2C:44-1(b)(5); defendant has no prior criminal history, N.J.S.A. 2C:44-1(b)(7); defendant's conduct was the result of circumstances unlikely to recur, N.J.S.A. 2C:44-1(b)(8); and defendant's character and attitude indicated that she was unlikely to commit another offense, N.J.S.A. 2C:44-1(b)(9).

convinced that the mitigating factors substantially outweigh the aggravating ones. Second, the defendant must present compelling reasons why the interest of justice demands a downgraded sentence. State v. L.V., 410 N.J. Super. 90, 109 (App. Div. 2009) (citing State v. Megargel, 143 N.J. 484, 496 (1996)). As the Supreme Court emphasized in Megargel, "the standard governing downgrading is high." 143 N.J. at 500.

To aid in the analytical process, the Court in Megargel identified several factors for the sentencing court to consider, including: "the degree of the crime [which] is the focus of the sentence"; whether "[t]he surrounding circumstances of an offense may make it very similar to a lower degree offense"; and "facts personal to the defendant," including his or her "role in the incident." Id. at 500–01.

Importantly, the Court made clear that the reasons justifying a downgrade must not only be "compelling," but must be based on circumstances in addition to and separate from the mitigating factors that substantially outweigh the aggravating factors. Id. at 505. Furthermore, "in those cases in which the Legislature has acted to provide an enhanced penalty for conviction of a particular offense, the downgrade of that offense requires more compelling

reasons than the downgrade of an offense for which the Legislature has not attached an enhanced penalty." Id. at 502.

The record before us shows that the sentencing judge thoughtfully applied the Megargel factors and determined that the reasons for the sentencing downgrade proffered by defendant could not be distinguished from the mitigating factors the judge had already accounted for. The sentencing judge also reasoned that the bar for establishing compelling reasons under N.J.S.A. 2C:44-1(f) was set even higher in this case due to the enhanced punishment for handgun offenses prescribed by the Graves Act.[9]

The judge ultimately concluded that defendant failed to establish a sufficiently compelling reason to justify a sentencing downgrade. In reaching that conclusion, the judge explained that defendant was a highly trained law enforcement officer, she was not being attacked when she fired her handgun, she was drinking for a significant period of time—although not so intoxicated that she did not appreciate her actions—and she was in a family residential

---

[9]  We note that N.J.S.A. 2C:43-6(c) requires that a person convicted for a violation of N.J.S.A. 2C:39-4(a) be sentenced to a minimum term of parole ineligibility fixed at not less than forty-two months. The sentencing judge in this case thus would have been required to impose the mandatory minimum forty-two-month period of parole ineligibility even if defendant had been sentenced under N.J.S.A. 2C:43-1(f) to a prison term appropriate to a third-degree conviction.

neighborhood when she discharged her weapon on the street. Accordingly, the

judge imposed a prison sentence at the bottom of the second-degree range.[10]

"Our role in reviewing a sentence imposed by a trial judge is limited."

L.V., 410 N.J. Super. at 107. We review only

> (1) whether the exercise of discretion by the sentencing
> court was based upon findings of fact grounded in
> competent, reasonably credible evidence; (2) whether
> the sentencing court applied the correct legal principles
> in exercising its discretion; and (3) whether the
> application of the facts to the law was such a clear error
> of judgment that it shocks the conscience."
>
> [State v. Megargel, 143 N.J. at 493 (citing State v. Roth,
> 95 N.J. 334, 363–65 (1984)).]

We conclude the sentencing judge's decision not to invoke the sentence

downgrade feature was based on well-supported findings of fact, and correctly

applied the governing principles of law. Nor does the five-year term of

imprisonment shock the judicial conscience, especially considering that a forty-

two-month parole ineligibility term was statutorily mandated. See supra note 9.

Although we affirm the sentence imposed on defendant's firearms

conviction, we are constrained to remand this matter for resentencing on

---

[10] We note the second and third-degree ranges overlap. See N.J.S.A. 2C:43-6(a)(1) and (2). The five-year prison term defendant received is at the bottom of the second-degree range and the top of the third-degree range.

defendant's criminal mischief conviction. Defendant and the State agree that the judge erred in sentencing defendant as if she had been convicted of fourth-degree criminal mischief as was originally charged in the indictment. As we have noted, the trial judge downgraded the mischief count from a fourth-degree crime to a disorderly persons offense based on the State's failure to present evidence that the damage caused to Cundiff's vehicle exceeded $500. See supra note 1. We therefore remand for the court to impose a new sentence on the disorderly person conviction and to correct the judgment of conviction. We affirm the convictions for possession of a firearm for an unlawful purpose and criminal mischief, and affirm the sentence imposed on the firearms conviction.

Affirmed in part; remanded for resentencing in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5002-17